UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

In re:

CAMTECH PRECISION MANUFACTURING, INC.,  Chapter 11
R & J NATIONAL ENTERPRISES, INC., and
AVSTAR FUEL SYSTEMS, INC.,

               Case No.:  10-22760-PGH
  Debtors.           (Jointly Administered)
_____/

**DEBTOR'S MOTION FOR ENTRY OF AN EXPEDITED ORDER (A) AUTHORIZING
AND SCHEDULING THE SALE OF THE DEBTOR, CAMTECH PRECISION
MANUFACTURING, INC'S ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS,
AND ENCUMBRANCES; (B) APPROVING ASSET PURCHASE AGREEMENT WITH
CAMTECH ACQUISITION, LLC; (C) AUTHORIZING DEBTOR TO ENTER INTO
ASSET PURCHASE AGREEMENT WITH CAMTECH ACQUISITION, LLC;
(D) APPROVING BREAK UP FEE TO CAMTECH ACQUISITION, LLC AS
STALKING HORSE BIDDER; (E) APPROVING BIDDING PROCEDURES; (F)
APPROVING THE FORM OF NOTICE OF SALE; (G) SCHEDULING AN AUCTION
TO ACCEPT HIGHER AND BETTER BIDS; AND (H) SCHEDULING HEARING TO
<u>APPROVE SALE ARISING OUT OF AUCTION PURSUANT TO 11 U.SC. § 363</u>**

(Request for Expedited **Hearing to Consider Bid Procedures Only Requested
for December 20, 2010 at 1:30 pm**)

Debtor-in-Possession, CAMtech Precision Manufacturing, Inc. ("**CAMtech**" or the

"**Debtor**"), by and through its undersigned counsel, hereby files this motion for entry of an order

(a) authorizing and scheduling the sale of substantially all of the Debtor's assets free and clear of

all liens, claims, and encumbrances; (b) approving the Asset Purchase Agreement with Camtech

Acquisition, LLC; (c) authorizing Debtor to enter into the Asset Purchase Agreement with

Camtech Acquisition, LLC; (d) approving the break up fee to Camtech Acquisition, LLC as

stalking horse bidder;  (e) approving bidding procedures; (f) approving the notice of sale; (g)

approving the break up fee to stalking horse bidder; (h) scheduling an auction to accept higher

and better bids; and (i) scheduling a hearing to approve the sale arising out of the auction,

pursuant to 11 U.S.C. § 363, Rules 2002, 6004(a) and 9014 of the Federal Rules of Bankruptcy

Procedure and Local Rule 6004-1 (the "**Sale Procedure Motion**").  In support of the Sale Procedure Motion, the Debtor states as follows:

## JURISDICTION

1.      This Court has jurisdiction over this Sale Procedure Motion pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue of this proceeding and this motion is proper in this district pursuant to 28 U.S.C. § 1409.

2.      The statutory predicate for the relief sought herein is section 363 of title 11 of the United States Code (the "**Bankruptcy Code**").

## Preliminary Statement

3.      Through this Sale Procedure Motion, the Debtor respectfully requests approval of a sale process through which the Debtor can expose substantially all of its assets (the "**Assets**"), as defined in Article II of the Asset Purchase Agreement (the "**APA**") between the Debtor and Camtech Acquisition, LLC (the "**Purchaser**"), to competitive bids through an auction.  A true and correct copy of the APA is attached hereto as **Exhibit "A."**  The Debtor and Purchaser have not executed the APA as of the date of the filing of this Motion.  Exhibit A to the Motion is therefore an unexecuted copy of the APA.  The Debtor will file an executed copy of the APA with this Court at its earliest opportunity.

4.      **As further set forth in this Motion, the Debtor seeks the following proposed deadlines in order to effectuate an expedited auction:**

> a.      **Deadline to conduct due diligence – January 8, 2011;**
>
> b.      **Deadline to submit Qualifying Bid Packet – January 8, 2011;**
>
> c.      **Deadline to tender deposit of $100,000 – January 8, 2011;**
>
> d.      **Deadline to approve Qualified Bidders – January 9, 2011;**

    e.    **Deadline to serve Qualified Bid Summary – January 9, 2011;**

    f.    **Proposed date for auction of Debtor's assets – January 10, 2011;**

    g.    **Proposed date for hearing to approve Sale – January 10, 2011; and**

    h.    **Proposed closing on Sale – on or before January 17, 2011.**

5.    **<u>As further set forth in the Motion, the Debtor's principal, Ronald Weaver, has a 25% ownership interest in Purchaser and will be receiving an employment agreement with Purchaser (defined below) on mutually agreeable terms if Purchaser is the successful bidder.</u>**

## <u>INTRODUCTION</u>

6.    On May 10, 2010, CAMtech, R & J National Enterprises, Inc. and AVStar Fuel Systems, Inc. (collectively, the "**Debtors**") filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.  The cases were jointly administered on May 12, 2010 (D.E. 15).

7.    Pursuant to Bankruptcy Code §§ 1107(a) and 1108, the Debtor is operating its business and managing its affairs as debtor-in-possession.  As of the date hereof, no trustee, examiner, or statutory committee has been appointed.

8.    The Debtor's primary business is the manufacture of aerospace and defense parts. Through this motion, the Debtor proposes to sell substantially all of its assets free and clear of all liens, claims and encumbrances, pursuant to Section 363(f) of the Bankruptcy Code (the "**Sale**"). The only remaining assets of the Debtor following the Sale will consist of those listed in Section 2.2 of the APA (the "**Excluded Assets**").

## <u>FACTUAL BACKGROUND</u>

### <u>*The Assets*</u>

9.      The Debtor is a New York corporation that maintains its principal place of business at 1365 Park Lane So., Jupiter, FL 33458.

10.     Through this motion, the Debtor respectfully requests approval of the sale of substantially all of its assets (the "**Assets**") to the Purchaser and/or assigns, pursuant to the APA, subject to higher and better offers.

11.     The Sale incorporates the potential assumption of numerous liabilities, as detailed in § 2.3 of the APA.

12.     The Sale of the Assets is the best method of maximizing the Debtor's estate.  In December 2009, AM General Corporation, CAMtech's largest customer, was not provided orders by the Department of Defense for up armor Humvees.  AM General in turn did not place orders with CAMtech, and CAMtech lost approximately $900,000 in general revenue per month, which represented 65% of its total monthly revenue at the time.  The Debtor has not been successful in replacing the lost revenues.  Therefore, in order to avoid the incurrence of additional administrative expenses and the further accumulation of accounts payable, the Debtor seeks to expose the Assets to higher and better offers at an auction that is discussed in detail below.

13.     Both prior and subsequent to the filing of this Chapter 11 case, the Debtor, with the substantial assistance of its financial advisor, Katie Goodman of Grisanti, Galef and Goldress ("GGG") has marketed the Assets and engaged in extensive solicitation of interest in the Assets. Based upon substantial marketing and solicitation and the responses and inquiries received, the Debtor is of the opinion that the proposed APA with the Purchase represents the highest and best offer for the Assets.

*The Debtor's Secured Creditors*

14.    The Assets are subject to the following liens, which will attach to the proceeds of the Sale unless the Purchaser otherwise assumes any of these obligations:

(a)    A first mortgage in the amount of $705,262.00 on real property located at 1365 Park Lane South, Jupiter, Florida 33458, held by UPS Capital Business Credit, P.O. Box 406994, Payment Account, Atlanta, Georgia 30384;

(b)    A second mortgage in the amount of $344,765.00 on real property located at 1365 Park Lane South, Jupiter, Florida 33458, held by Enterprise Bank of Florida, 11811 U.S. Highway One, North Palm Beach, Florida 33408; and

(c)    UPS Capital Business Credit, 280 Trumbull Street, Hartford, Connecticut 06103, asserts security interests in the amount of $1,627,871.00 on real property located at 1400 Westpark Way, Euless, Texas 76040, and real property located at 1365 Park Lane South, Jupiter, Florida 33458.

15.    In addition, the following entities assert liens against the Assets as follows:

(a)    Industrial Equipment Capital, 2884 Peyton Road, La Verne, California 91750, asserts a security interest in the amount of $590,460.00 on equipment.

(b)    Machinery Finance - MFR, P.O. Box 41601, Ref. No. 000000000523775, Philadelphia, Pennsylvania 19101, asserts a security interest in the amount of $110,706.00 on equipment.

(c)    People's Capital and Leasing Corp., 255 Bank St., 4th Floor, Waterbury, Connecticut 06702, asserts a security interest in the amount of $37,359.00 on equipment.

(d)    People's Capital and Leasing Corp., 255 Bank St., 4th Floor, Waterbury, Connecticut 06702, asserts a security interest in the amount of $90,429.00 on equipment.

(e)    Plains Capital Leasing, 6221 Riverside Drive, Suite 105, Irving, Texas 75039, asserts a security interest in the amount of $30,159.00 on equipment.

(f)    PNC Equipment Finance, 995 Dalton Avenue, Attn.: Lease Servicing/Setup Processing, Cincinnati, Ohio 45203, asserts a security interest in the amount of $500,814.00 on equipment.

(g)    PNC Equipment Finance, 995 Dalton Avenue, Attn.: Lease Servicing/Setup Processing, Cincinnati, Ohio 45203, asserts a security interest in the amount of $200,822.00 on equipment.

(h)    Regions Bank, 6990 S.W. 8th St., Suite 200, Miami, Florida 33144, asserts a security interest in the amount of $3,900,000.00 on substantially all of the Debtor's personal property.

(i)     Regions Bank, 6990 S.W. 8th St., Suite 200, Miami, Florida 33144, asserts a security interest in the amount of $282,107.00 on substantially all of the Debtor's personal property.

(j)     Siemens Financial Services, 3417 Collection Center Drive, Chicago, Illinois 60693, asserts a security interest in the amount of $759,842.00 on equipment.

(k)     Siemens Financial Services, 3417 Collection Center Drive, Chicago, Illinois 60693, asserts a security interest in the amount of $713,867.00 on equipment.

(l)     Siemens Financial Services, 3417 Collection Center Drive, Chicago, Illinois 60693, asserts a security interest in the amount of $365,384.00 on equipment.

(m)     Siemens Financial Services, 3417 Collection Center Drive, Chicago, Illinois 60693, asserts a security interest in the amount of $337,984.00 on equipment.

(n)     Siemens Financial Services, 3417 Collection Center Drive, Chicago, Illinois 60693, asserts a security interest in the amount of $195,627.00 on equipment.

### *The Purchaser as Stalking Horse Bidder*

16.     The Debtor seeks to use the APA as the stalking horse bid (the "**Stalking Horse Bid**"), making the Purchaser the "**Stalking Horse Bidder**."  <u>**Ronald Weaver is an insider of the Debtor, as defined in § 101(31) of the Bankruptcy Code, and owns a 25% equity stake in the Purchaser and will receive an employment agreement with Purchaser on mutually agreeable terms to the extent the Purchase is the successful bidder.**</u>

17.     The Purchaser proposes to pay $1,000,000.00 in exchange for the Assets and assume various liabilities of the Debtor, as detailed in § 2.3 of the APA, in the approximate amount of $6,802,898, resulting in an 'all in' purchase price for the Assets of approximately $7,802,898.

18.     Subject to this Court's approval, the Purchaser shall be entitled to a breakup fee of its actual expenses incurred relating to the Sale, to a maximum dollar amount of $350,000.00 (the "**Breakup Fee**") which shall constitute an allowed administrative expense claim.  The Break Up Fee is calculated, in part, based on the total enterprise value of this transaction which

includes the potential assumption of over $7 million in secured or leased debt, plus the cash consideration described further in this Motion.  The Break Up Fee shall be paid at closing from the cash consideration of the purchase price in the event that the Purchaser is not the successful bidder.

19.     The Debtor seeks to expose the Purchaser's offer to higher and better offers in order to maximize the value of the Sale.

## **RELIEF REQUESTED**

20.     The Debtor respectfully requests entry of an Order (a) authorizing and scheduling the sale of the Debtor's Assets free and clear of all liens, claims, and encumbrances to the extent described herein; (b) approving the Asset Purchase Agreement with Camtech Acquisition, LLC; (c) authorizing Debtor to enter into the Asset Purchase Agreement with Camtech Acquisition, LLC; (d) approving the break up fee to Camtech Acquisition, LLC as stalking horse bidder;  (e) approving bidding procedures; (f) approving the notice of sale; (g) approving the break up fee to stalking horse bidder; (h) scheduling an auction to accept higher and better bids; and (i) scheduling a hearing to approve the sale arising out of the auction, pursuant to 11 U.S.C. § 363, Rules 2002, 6004(a) and 9014 of the Federal Rules of Bankruptcy Procedure and Local Rule 6004-1

21.     In addition, the Debtor is also requesting that in order to expedite the sale of the Assets that the Court waives the requirement that any order approving the Sale be stayed for ten days as required by Federal Rule of Bankruptcy Procedure 6004(h).

22.     Courts interpreting Section 363(b) have approved non-ordinary course sales even where substantially all of a debtor's assets were being sold prior to a plan of reorganization being proposed.  *In re Lionel Corp.*, 722 F.2d 1063, 1070–71 (2nd. Cir. 1983); *In re Parkstone Med.*

*Info. Sys.*, 2001 Bankr. LEXIS 1356 (Bankr. S.D. Fla. 2001); *In re Baldwin United Corp.*, 43 B.R. 888, 905 (Bankr. S.D. Ohio 1984). Following the guidelines established by the seminal decision of the Second Circuit in the *Lionel* case and its progeny, a debtor may sell all of the assets of the estate under the Bankruptcy Code section 363 outside of a plan. As the *Lionel* court observed:

> Resolving the apparent conflict between Chapter 11 and section 363(b) does not require an all or nothing approach. Every sale under 363(b) does not automatically short-circuit or side step Chapter 11; nor are the two statutory provisions to be read as mutually exclusive. Instead, if a bankruptcy judge is to administer a business reorganization successfully under the Code, then… some plan for the operation of both 363(b) must be allowed for. …The rule we adopt requires that a judge determining a section 363(b) application expressly find from the evidence presented before him at the hearing a good business reason to grant such an application.

*In re Lionel Corp.*, 722 F.2d at 1070–71.

23.     Courts have uniformly held that approval of a proposed sale of property pursuant to section 363(b) of the Bankruptcy Code is appropriate if a court finds that the transaction represents the sound business judgment on the part of the debtor. *See, e.g.*, *In re Chateaugay Corp.*, 973 F.2d 141, 143 (2d Cir. 1992); *In re Lionel Corp.*, 722 F.2d at 1070.

24.     The Debtor respectfully submits that all of the factors demonstrating its sound business judgment are met, and that the Sale should be approved. The Sale appears to be the best manner in which to maximize value for the estate. There are also administrative costs associated with the continued operation of the Debtor. Therefore, an extended delay in the sale of the Assets will be to the detriment of the creditors of this estate. As a result, the Debtor has determined that the best way to maximize the value of its assets is to sell the Assets, for fair market value, to the highest and best bidder pursuant to a section 363 sale.

25.    Once a court is satisfied that there is a sound business justification for the proposed sale, the court must then determine whether (a) the sale price is fair and reasonable; (b) the debtor-in-possession has provided the interested parties with adequate and reasonable notice; and (c) the purchaser is proceeding in good faith.  *See In re Abbotts Dairies of Pennsylvania*, 788 F.2d 143, 147 (3d Cir. 1986) (noting that the phrase "good faith" encompasses one who purchases in good faith and for value); *In re Weatherly Frozen Food Group, Inc.*, 149 B.R. 480, 483 (Bankr. N.D. Ohio 1992).

### A.  The Purchase Price Is Fair and Reasonable

#### i.  The Auction

26.    While the Debtor submits that the APA represents fair and reasonable consideration for the sale of the Assets, the Debtor believes that the auction and bidding procedures set forth below will ensure that the estate realizes the highest and best possible value for the Assets.

27.    Accordingly, the Debtor proposes to sell the Assets free and clear of all liens, claims, and encumbrances, and to expose the credit bid to higher and better offers at an auction (the "**Auction**") that will take place at the **U.S. Bankruptcy Court, Flagler Waterview Building, 1515 North Flagler Drive, 8th Floor, Courtroom A, West Palm Beach, Florida 33401 on January 10, 2011** or as otherwise determined by the Court.

#### ii.  Proposed Bidding Procedures

28.    A person may be qualified to participate in the Auction if by the bid deadline of **January 8, 2011** (the "**Bid Deadline**"), the following are provided:

(a)    A deposit of $100,000.00 (the "**Deposit**") payable by bank cashier's check or wire transfer into the non-interest bearing escrow account of Shraiberg, Ferrara & Landau, P.A. along with the SSN or EIN of the bidding person or entity;

(b)  An executed asset purchase agreement and a redline version showing changes from the APA attached hereto as **Exhibit "A."** Any competing bid must not contain any contingencies to the validity, effectiveness and/or binding nature of the offer, including without limitation, contingencies for financing, due diligence or inspection;

(c)  The amount the person is willing to pay for the Assets, but in no event shall this amount be less than $775,000.00 (the "**Initial Bid**")[1], which includes a $50,000 over-bid, all of which shall be paid in cash at closing; and

(d)  Reasonable financial information from which the Debtor can assess the financial wherewithal and sophistication of the bidder to close on the Sale in the event that the bidder is the Successful Bidder. Such information shall include, at a minimum, financial statements, bank account statements or other documents of such entity (including information on any third-party funding required to consummate and perform under the Asset Purchase Agreement) establishing such entities financial wherewithal to timely close the transactions contemplated thereunder.

(e)  A letter setting forth the identity of the Potential Bidder, the contact information for such Potential Bidder, and full disclosure of all parties participating with the Potential Bidder, as well as full disclosure of any prepetition and postpetition affiliation that the Potential Bidder may have with (i) the Debtors, (ii) Debtor's affiliates, (iii) major creditors of the Debtor, (iv) equity security holders of the Debtors, and (v) any of the Debtor's former officers or directors or other insiders; and

(f)  An executed letter acknowledging receipt of a copy of the Bidding procedures and agreeing to accept and be bound by the provisions contained therein.

(collectively, the "**Qualifying Bid Packet**"). The Qualifying Bid Packet must be delivered with the items described above no later than **5:00 p.m. E.S.T. on January 8, 2011** to:

(a)  Bradley Shraiberg, Esq., Shraiberg, Ferrara & Landau, P.A., Counsel for Debtor, 2385 NW Executive Center Dr., Suite 300, Boca Raton, Florida 33431, Telephone (561) 443-0800, Facsimile No. (561) 998-0047;

(b)  D. Brett Marks, Esq., Akerman Senterfitt, Counsel for the Purchaser, 350 E. Las Olas Blvd., Suite 1600, Fort Lauderdale, Florida 33301, Telephone (954) 463-2700, Facsimile No. (954) 463-2224;

---

[1] The dollar amount of the Initial Bid represents a $1,000,000 cash payment, less the aggregate amount of Cure Costs (as defined in the APA), with the Cure Costs not to exceed $225,000. *See* APA § 3.1(b).

(c)     Lisa Schiller, Esq., Rice, Pugatch Robinson and Schiller, P.A., Counsel for Regions Bank, 101 N.E. 3rd Ave., Suite 1800, Fort Lauderdale, Florida 33301, Telephone (954) 462-8000, Facsimile No. (954) 462-4300; and

(d)     Glenn Moses, Esq., Genovese Joblove & Battista, P.A., Counsel for the Creditors' Committee, 100 Southeast Second Street, 44th Floor, Miami, Florida 33131, Telephone (305) 349-2300, Facsimile No. (305) 349-2310.

29.     Prior to the Auction, the Debtor shall evaluate each Qualifying Bid Packet submitted in accordance with paragraph 27 and may then identify a person, persons, entity or entities from among those who submitted a Qualifying Bid Packet and deem those person(s) "Qualified Bidders" as well as their offer to purchase the Assets.  By participating in the Auction, each Qualified Bidder consents to its bid being designated as a back-up bid.

30.     A Qualified Bid will be valued based upon the following factors: (a) the purported amount of the Qualified Bid, including any benefit to the Debtor's bankruptcy estates from any assumption of liabilities of the Debtors; (b) the ability to close the proposed sale transaction without delay and within the time frames contemplated by the APA; and (c) any other factors the Debtors may deem relevant.

31.     The Debtor shall file and serve upon all interested parties entitled to receive notice, including the holders of qualified bids (the "**Qualified Bids**"), fully executed copies of the Qualified Bids to be considered at the Auction no later than **January 9, 2011** (the "**Qualified Bid Summary**").  This requirement is waived in the event that there are no Qualified Bids.  The Debtor shall notify all Qualified Bidders, no later than **5:00 p.m. E.S.T. on January 9, 2011**, that they may participate in the Auction.

32.     The Auction shall be conducted by the Court and shall be a forum in which the Qualified Bidders may make competing bids to purchase the Assets, with an initial over-bid of $50,000 and then minimum bid increments of $25,000.00 or increments as otherwise decided by the Court.  The Auction shall conclude when the Court receives what is determined by the

Debtor to be the highest and best offer to purchase the Assets (the "**Successful Bid**").  The Court may also identify an acceptable Back-Up Bid.

33.     Except as otherwise stated herein, each Deposit shall be maintained in a **non-interest** bearing account and subject to the jurisdiction of this Court.  Within five (5) business days from the entry of an order approving the Sale, the Debtor shall return all Deposits to all Qualified Bidders except the Successful Bidder or the person who submitted the Back-Up Bid (the "**Back-Up Bidder**"), whose Deposit shall be applied by the Debtor against the purchase price at the closing.  In the event that the Successful Bidder closes the Sale, the Debtor shall return the Back-Up Bidder's Deposit within five (5) business days from the closing.  In the event the Back-Up Bidder closes on the purchase of the Assets, its Deposit shall be applied by the Debtor against the purchase price.

34.     All Qualified Bidders and the Purchaser shall be deemed to have consented to the core jurisdiction of this Court and to have waived any right to a jury trial in connection with any disputes relating to the Auction and/or the Sale.  All asset purchase agreements shall be governed by and construed in accordance with the laws of the State of Florida.  All Qualified Bidders and the Purchaser shall be bound by their bids until conclusion of the Auction.  If the Successful Bidder is unable or unwilling to close the Sale, the Successful Bidder shall forfeit its Deposit to the Debtor and the Debtor shall close the Sale with the Back-Up Bidder, without further notice or hearing, who shall then be obligated to close the Sale on the terms of the Back-Up Bid and the corresponding Bidder's asset purchase agreement no later than five (5) days thereafter.  If the Back-Up Bidder, if any, is unable or unwilling to close the Sale in the time permitted, the Back-Up Bidder shall forfeit its Deposit to the Debtor.

35.     In the event the Debtor fails to receive a Qualified Bid, the Debtor shall cancel the Auction and seek final approval of the sale to the Purchaser at the final hearing scheduled by the Court as set forth below.

### iii.  Hearing to Approve Sale

36.     Approving the sale of the Assets in an expeditious manner is important to both the Debtor and the Successful Bidder to prevent any further diminution of the Assets.

37.     For that reason, the Debtor requests that the Court conduct a hearing to approve the Sale arising out of the Auction on **January 10, 2011**.  Once approved, the closing is planned to occur no later than eleven (11) days after entry of an Order approving the Sale or by January 17, 2010 if the Purchaser is the successful bidder.

### iv.  Due Diligence

38.     Due diligence should be coordinated through the Debtor's Counsel.

39.     The deadline for completing due diligence is **January 8, 2011**.

### B.  Adequate and Reasonable Notice

40.     The Debtor shall provide by e-mail; facsimile and/or U.S. Mail written notice of the Auction, the bidding procedures, and the Sale Hearing within one (1) business day from the entry of order approving the Sale Procedure Motion to: (a) those persons who in any way contacted Debtor or any of its representatives regarding the sale of the Assets; (b) those persons who the Debtor has reason to believe may possess an interest in purchasing the Assets; (c) the U.S. Trustee; (d) counsel to the Purchaser; (e) counsel for Regions Bank; (f) counsel for the Creditors' Committee; (g) the Internal Revenue Service; (h) parties to executory contacts and leases with the Debtor; (i) all other parties who have filed a notice of appearance; and (j) all other

creditors.  The notice shall be substantially in the form attached hereto as **Exhibit "B"** and shall include a copy of the APA.

41.    The Debtor submits that such notice constitutes good and sufficient notice of the Auction and related matters and that no further notice need be given.

### *Notice of Sale Procedure Motion*

42.    Notice of this Sale Procedure Motion has been given to: (a) those persons who have presented bids to date; (b) the U.S. Trustee; (c) counsel to the Purchaser; (d) counsel for Regions Bank; (e) counsel for the Creditors' Committee; (f) the Internal Revenue Service; (g) parties to executory contracts and leases with the Debtor; (h) all other parties who have filed a notice of appearance; and (i) all other creditors.

43.    The Debtor submits that such notice constitutes good and sufficient notice of the Sale Procedure Motion and that no further notice need be given.

### C.  The Buyer is a Good Faith Purchaser

44.    The Debtor also requests that the Court enter a finding that the Successful Bidder (defined herein), constitutes a good faith purchaser of the Assets pursuant to 11 U.S.C. § 363(m) such that the reversal or modification on appeal of the sale of the Assets to the Successful Bidder shall not affect the validity of the sale to the Successful Bidder whether or not the Successful Bidder knew of the pendency of the appeal.

45.    Section 363(m) of the Bankruptcy Code provides that the reversal or modification on appeal of a transaction authorized under Section 363(b) of the Bankruptcy Code does not affect the validity of the sale to an entity that acquired the property in good faith.  *See e.g.*, *In re Adamson Co., Inc.*, 159 F.3d 896 (4th Cir. 1998.); *In re Stadium Management Corp.*, 895 F2d 845 (1st Cir. 1990).

46.     The ultimate buyer will be a good faith purchaser, as the Sale will be negotiated at arms' length and will be subject to higher and better offers at the Auction.

### D.  Conclusion

47.     The Sale should be approved because all of the requirements exist for the Court to authorize the proposed sale in accordance with the proposed bidding procedures set forth in this Motion.

**WHEREFORE**, the Debtor respectfully requests entry of an Order granting the Sale Procedure Motion and: (a) authorizing and scheduling the sale of substantially all of the Debtor's assets free and clear of all liens, claims, and encumbrances; (b) approving the Asset Purchase Agreement with Camtech Acquisition, LLC; (c) authorizing Debtor to enter into the Asset Purchase Agreement with Camtech Acquisition, LLC; (d) approving the break up fee to Camtech Acquisition, LLC as stalking horse bidder;  (e) approving bidding procedures; (f) approving the notice of sale; (g) approving the break up fee to stalking horse bidder; (h) scheduling an auction to accept higher and better bids; and (i) scheduling a hearing to approve the sale arising out of the auction, pursuant to 11 U.S.C. § 363, Rules 2002, 6004(a) and 9014 of the Federal Rules of Bankruptcy Procedure and Local Rule 6004-1

**SHRAIBERG, FERRARA & LANDAU, P.A.**
Attorney for the Debtor
2385 NW Executive Center Drive, #300
Boca Raton, Florida 33431
Telephone: 561-443-0800
Facsimile: 561-998-0047

By: ___/s/ Bradley S. Shraiberg_____
       Bradley S. Shraiber
       Florida Bar. No. 121622
       bshraiberg@sfl-pa.com

## ATTORNEY CERTIFICATION

**I HEREBY CERTIFY** that I am admitted to the Bar of the United States District Court for the Southern District of Florida and I am in compliance with the additional qualifications to practice in this Court set forth in Local Rule 2090-1.

## CERTIFICATE OF SERVICE

I certify that on December 10, 2010 I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day by transmission of Notices of Electronic Filing generated by CM/ECF to those parties registered to receive electronic notices of filing in this case.

**SHRAIBERG, FERRARA & LANDAU, P.A.**
Attorney for the Debtor
2385 NW Executive Center Drive, #300
Boca Raton, Florida 33431
Telephone: 561-443-0800
Facsimile: 561-998-0047

By: ___/s/ Bradley S. Shraiberg_____
　　　Bradley S. Shraiberg
　　　Florida Bar. No. 121622
　　　bshraiberg@sfl-pa.com